```
                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEVADA
                           RENO, NEVADA
```

| | |
|---|---|
| MARY LAHREN, an individual; RICHARD SCHWEICKERT, an individual; ANN DOUGHERTY, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA, a political subdivision of the State of Nevada; ROBERT KARLIN, an individual; JOHN LILLEY, an individual; JANE LONG, an individual; JOHN FREDERICK, an individual; JAMES TARANIK, an individual<br><br>Defendant. | 3:03-CV-0631-ECR-VPC<br><br><br>**ORDER** |

## I.  Procedural Background

On August 30, 2004, Plaintiff Richard Schweickert ("Plaintiff" or "Schweickert") filed a Second Amended Complaint (#31) against Defendants University and Community System of Nevada, Robert Karlin, John Lilley, Jane Long, John Frederick, and James Taranik ("Defendant", "Defendants", "UCCSN", "Karlin", "Lilley", "Long", "Frederick" and "Taranik") alleging claims of retaliation and violation of his First and Fourteenth Amendment rights.  On May 4,

2005, Defendants filed Motion for Summary Judgment (#52) with respect to the claims of Plaintiff Schweickert. On August 29, 2005, Plaintiff responded to the motion (#76) and Defendants filed a reply (#86) on September 12, 2005. The motion (#52) is ripe, and we now rule on it.

**II.  Statement of Facts**

Plaintiff Richard Schweickert received a Ph.D. in geology from Stanford University in 1972 and became employed as a full professor at the University of Nevada, Reno ("the University") in 1982. He was granted tenure three years later. He was elected to a three year term as the department chairman in 1993 and was subsequently reelected to a second three year term in 1996. He was elected to serve a seventh year as department head while Dr. Robert Karlin who was elected chair in 1999 took sabbatical leave.

Co-Plaintiff Mary Lahren was a student of Schweickert's. Lahren and Schweickert have worked together since the early 1980's and have researched and published a number of papers together.

Plaintiff Lahren filed a Charge of Discrimination with the EEOC on February 27, 2002, and a complaint with the University's Affirmative Action Office on February 28, 2002. Lahren alleged that she had been sexually harassed by department chair Dr. Karlin and when she rebuffed his advances, he retaliated against her by not assigning her classes to teach.

Plaintiff Schweickert participated in the investigation of Lahren's claims by aiding her in the mediation between Lahren and the University.

2

Plaintiff Schweickert claims that he was subjected to adverse terms and conditions of employment after participating in Lahren's sexual harassment claim. He claims that there were numerous false, defamatory and malicious statements made by Defendants Long, Frederick, Dr. Karlin and Taranik which created a hostile work environment for him. Second, Plaintiff claims that Long unfairly hindered his ability to obtain grant money from the federal government. When Dr. Karlin became the chair of the department, Plaintiff argues that he too closely scrutinized Plaintiff's grant proposals and continued to scrutinize them closely after he participated in the Lahren sexual harassment claims. Dr. Karlin also kept data collected in 1999-2000 from Plaintiff which Plaintiff desired for research and publication purposes. Plaintiff also alleges that Dr. Karlin and President Lilley gave him a less favorable review as a result of his involvement with the Lahren case and that Long and Frederick spread false rumors about Plaintiff's capacity as a witness for Lahren and that Lahren was "involved" with Plaintiff.[1]

---

[1] We reject facts stated in Plaintiff's Declaration to the extent that they contradict deposition testimony and offer new claims for relief.

An issue of material fact cannot be created through submitting a self-serving declaration which contradicts earlier deposition testimony. Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543-44 (9th Cir. 1975)("Mere allegations and denials...do not alone establish the existence of a genuine dispute of material fact.").

In addition, Plaintiff cannot raise new claims for the first time in submissions in opposition to a summary judgment motion. Doe v. Haw Dep't of Educ., 351 F. Supp. 2d 998, 1009 (9th Cir. 2004)(rejecting a claim brought only on summary judgment as not plead within the original complaint); Smith v. Coleman, 2001 U.S. Dist. LEXIS 16584, at *6 (N.D. Cal. 2001)("an opposition is not the proper forum to raise new claims.") Coger v. Connecticut, 309 F. Supp. 2d 274 (D. Conn. 2004); Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir.

3

None of these incidents amounts to actionable retaliation under Title VII.  Therefore, there was no violation of Plaintiff's rights under the First and Fourteenth Amendment on this basis.

**1.   Title VII Retaliation**

To establish a prima facie case of discrimination with respect to Defendants' actions, Plaintiff must show (1) he undertook a protected activity; (2) his employer subjected him to an adverse employment action; and (3) there is a causal link between those two events.  Okwuosa v. Employment Dev. Dep't (EDD), 2005 U.S. App. LEXIS 15006, at * 8 (9th Cir. 2005).  If Plaintiff presents a prima facie case of retaliation, the burden then shifts to Defendants to provide evidence that Plaintiff was adversely affected for a legitimate non-discriminatory reason.  Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1140-41 (9th Cir. 2001)(citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)).  If Defendants offer a legitimate non-

---

2005)(holding that raising of a new claim in opposition to summary judgment by the defendant was improper because it would cause substantial prejudice to the defendant even though the claim was based on the same set of facts); McShane v. Gonzalez, 2005 U.S. App. LEXIS 15924, at *27-28 (11th Cir. 2005)(holding that although the Supreme Court has mandated liberal pleading, plaintiffs are not given an opportunity to "raise new claims at the summary judgment stage.") Cooley v. Great Southern Wood Preserving, 138 Fed. Appx. 149, 153 (11th Cir. 2004)(same); Tucker v. Union of Needletrades, Indus., & Textiles Emples, 407 F.3d 784, 788 (6th Cir. 2005)(same).
   Plaintiff, for the first time, raises in his motion for summary judgment (1) interference with Plaintiff's role as a witness; (2) violation of confidentiality; (3)denial of a fair evaluation process; (4) withholding research opportunities; (5) more disparaging remarks; and (6) denying teaching opportunities.  Since these claims were not raised in the complaint, they will not be considered in our ruling on the motion for summary judgment. No order has been entered permitting the complaint to be amended to add such additional claims.

4

discriminatory reason for the adverse action, the burden then shifts back to the Plaintiff to show that the proffered reason was pretext for discrimination. Id. (internal citations omitted).

Here, Plaintiff and Defendants do not dispute that Plaintiff engaged in a protected activity. Instead, they disagree over whether Plaintiff was subject to adverse employment action and whether there is a causal link between the alleged adverse actions and his protected activity.

## A. Spreading of Rumors

In the complaint, Plaintiff Schweickert alleges that Defendants Long, Frederick, Dr. Karlin, Taranik spread false, defamatory and malicious rumors about Plaintiff which damaged Plaintiff's reputation and created a hostile work environment.

Plaintiff alleges that Provost John Frederick and Dean Jane Long told Ann Dougherty, the University's Affirmative Action Officer investigating Lahren's claim, that he was not a credible witness for Lahren. Plaintiff also alleges that Dean James Taranick made disparaging remarks including saying to student Bryan Law that Plaintiff could not bring in as much research funding as Dr. Karlin. Plaintiff also complains of Dr. Karlin's statement that Plaintiff had a long history of "involvement" with Lahren.

We find these statements insufficient to prove adverse employment action. The Ninth Circuit has held that in order to constitute adverse employment action, the treatment but be "reasonably likely to deter employees from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

5

While the Ninth Circuit has been expansive in its view of what constitutes adverse employment action, it has imposed limits. Mere ostracism in the workplace is not an adverse employment action. Stroth v. Southern Cal. Permanente Medical Group, 79 F.3d 859, 859 (9th Cir. 1996). Neither is badmouthing an employee when it is not in the context of a job reference. Brooks v. City of San Mateo, 229 F.3d 917, 929 (9th Cir. 2000); Nunez v. City of Los Angeles, 147 F.3d 867, 875 (9th Cir. 1998).[2]

---

[2] Plaintiff argues that Brooks is inapplicable to this situation as (1) it ignores the "reasonable likely to deter standard" (2) Brooks was citing Nunez which involved First Amendment retaliation not Title VII retaliation and (3) neither Brooks nor Nunez involved an attempt to adversely influence the course of an investigation. Plaintiff's attempts to make Brooks inapplicable are misguided. Contrary to Plaintiff's arguments, this court is bound to follow Ninth Circuit law. Both Brooks and Nunez did weigh whether badmouthing outside the employment reference context would constitute retaliation in holding that "[o]n the one hand, we worry that employers will be paralyzed into inaction once an employee has lodged a complaint under Title VII....On the other hand, we are concerned about the chilling effect on employee complaints resulting from an employer's retaliatory actions." The Ninth Circuit in Brooks was considering a Title VII retaliation case contrary to Plaintiff's assertions, that Brooks involved a First Amendment claim. In addition, we note that Brooks has been applied to several Title VII retaliation cases in this circuit. See Summar v. Potter, 355 F.Supp. 2d 1046, 1058 (D. Alaska

6

We find that these statements that Plaintiff Schweickert complains of may amount to or result in badmouthing and ostracism by fellow employees but that they cannot constitute adverse employment action because they are outside the employment reference context.  Plaintiff's complaint that Frederick and Long alleged that he was not a credible witness for Lahren has nothing to do with Plaintiff's performance at his job and was made to the University's Affirmative Action Officer.  In addition, the statement had justification in that Lahren and Plaintiff had been colleagues and good friends for over 20 years and as such, Plaintiff, as a good friend of Lahren's, might not have been as credible as a witness for Lahren.

Dean Taranik's statements made to Bryan Law about Plaintiff's ability to bring in grant money was outside the job reference

---

2005); Mosakowski v. PSS World Med, Inc., 329 F. Supp. 2d 1112, 1124-1125 (D. Ariz. 2003); Bahri v. Home Depot USA, Inc., 242 F. Supp. 2d 922, 932 (D. Or. 2002); Jaurrieta v. Portland Pub. Sch., 2001 U.S. Dist. LEXIS 23515, at *40-41 (D. Or. 2001); Christiensen v. Nordell, 2001 U.S. Dist. LEXIS 22604, at *9 (D. Or. 2001).  Plaintiff's claim that this case is different from Brooks because here, unlike Brooks, there was an attempt to influence proceedings is without merit as this case does not involve an employer attempting to sway proceedings. Plaintiff's claims of retaliation are for acts that happened after Lahren's sexual harassment settlement agreement had been signed and therefore do not display a desire to sway proceedings by retaliating against Schweickert.

context. Law was not seeking to employ Plaintiff and therefore any statements made to him are beyond the purview of Title VII retaliation.

Lastly, even if it were true that Dr. Karlin's statement about Lahren and Plaintiff's involvement was related to a rumored romantic involvement, this statement is also outside the job reference context and will not constitute adverse employment action.

**B.  Unfair Consideration of Research Proposals**

Because some other professor's proposal was granted, Plaintiff complains that Defendant Long interfered with the evaluation of his proposals sent to the Great Basin Center for Geothermal Research. The decision not to grant Plaintiff's proposal was made before Plaintiff became involved in Lahren's sexual harassment claim investigation. When Plaintiff questioned Long's decision, Long responded that the other researcher, John Blewitt, received the grant because he "brought a new approach to geodesy to the exploration of geothermal that was unique and was subsequently reviewed at the top of the entire research portfolio for DOE and geothermal."

There is a question whether Plaintiff has established a prima facie case of retaliation because the granting of the other professor's application for a grant happened six months before Lahren filed her claims and fails to show any other causation connection between the protected activity and this action by Long. However, in any event, we find that Plaintiff has failed to refute

8

Defendants' legitimate non-discriminatory reason that Blewitt had a more novel and unique proposal than Plaintiff.  While Plaintiff offers his own self-serving conclusory statement that the proposal was not unique, he fails to show any specific reasons why his proposal was more unique and more worthy of being granted than Blewitt's. United States v. De Los Santos-Serna, 86 Fed. Appx. 238, 240 (9th Cir. 2003)("Because the only evidence introduced by Santos-Serna in support of the reduction was his own self-serving statement, the district court did not clearly err."); Cassidy v. Tenorio, 856 F.2d 1412, 1416 (9th Cir. 1988) (naked conclusory allegation insufficient to warrant relief from judgment).  In addition, whether Long had the ability to grant proposals does not play into whether Blewitt was wrongly awarded the grant over Plaintiff.

Plaintiff also complains that Long refused to transmit a National Science Foundation grant proposal in violation of his faculty rights.  Long informed Plaintiff that she would submit the proposal if he removed Lahren's name because Lahren was to resign prior to the time the grant would commence in November 2002. Plaintiff never resubmitted the proposal.

Defendants have offered a legitimate non-discriminatory reason which Plaintiff has failed to refute.  Lahren was not going to be a member of the University faculty when the grant was to commence. Plaintiff was told that he could resubmit the claim but Plaintiff never resubmitted the proposal to comply with Long's suggestion. Since Defendants' action on the NSF grant was not a final action and indeed Long gave Plaintiff leave to amend his grant, it cannot

9

serve as adverse employment action.  See Brooks, 229 F.3d at 292 ("Because the evaluation could have been changed on appeal, it was not sufficiently final to constitute adverse employment action because it was subject to modification by the city.").

**C.   Extensive Scrutiny to Grant Expenditures**

Plaintiff complains that Defendants Dr. Karlin and Long closely scrutinized his grant expenditures in retaliation for his involvement in Lahren's sexual harassment claim investigation. Plaintiff admits that the scrutiny of his grant expenditures began in early 2001-before Lahren alleged her claims of sexual harassment.  Plaintiff testified that adverse treatment to him and Lahren by Karlin actually began when Karlin became the chair of the department in 2000.

It is doubtful that more closely scrutinizing expenditures is actually an adverse employment action because Plaintiff has not claimed that he suffered by losing grant money or by being reprimanded for his expenditures.  Nonetheless in any event, Plaintiff has failed to establish a causal link between the claimed adverse employment action and the protected activity.

To establish causation, Plaintiff must show "by a preponderance of the evidence that engaging in the protected activity was one of the reasons for [his] firing and that but for such activity [he] would not have been fired."  Ruggles v. California Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir. 1986)(quoting Kauffman v. Sidereal Corp., 795 F.2d 343, 345 (9th Cir. 1982). Causation establishing a prima facie case "may be

10

inferred from evidence showing that the adverse action occurred shortly after the employee [engaged in protected activity], that the employer treated the appellant differently from other employees, and that the employer's treatment of the employee changed after the employer learned of the employee's [protected activity]." Kelley v. County of Ventura Personnel Dep't, 1994 U.S. App. LEXIS 18890, at *6 (9th Cir. 1994).

Here, Plaintiff Schweickert admits that a change in policies at the department began when Dr. Karlin took over as the chair of the department. He admits that his expenditures were closely scrutinized beginning in 2001-long before Plaintiff became involved in Lahren's sexual harassment investigation. For this reason, the fact that the treatment did not change after Plaintiff became involved in the sexual harassment investigation refutes the causal link between the protected activity and the adverse employment action. Because Plaintiff has not established that he was subject to different treatment that occurred after he got involved with Lahren's investigation, he has failed to prove causation and therefore has not proved a prima facie case of retaliation.

**D.  Dr. Karlin's Denial of Access to Data**

Plaintiff Schweickert alleges that Defendant Karlin denied him access to data necessary for research. The data at issue was core data collected from 1999-2000 when Plaintiff was the chair of the department. Dr. Karlin indicated that he did give Plaintiff access to the raw data but refused to give him the results that he and other researchers had come to as his own work product.

11

We do not examine whether the withholding of data constitutes adverse employment action as Plaintiff has failed to refute Defendant's legitimate non-discriminatory reason for not giving Plaintiff access to other parts of the data.  Karlin asserts that he refused to give Plaintiff the results of the investigation which were his own work product but allowed him access to the raw data. Plaintiff does not dispute this and instead argues that he still had rights to all the data.  Because Plaintiff has failed to show how Defendant's legitimate non-discriminatory reasons are pretext for retaliation, summary judgment against Plaintiff is appropriate on this claim.

**E.   Dr. Karlin's Statement to Long regarding Plaintiff's misconduct on research grants**

Plaintiff Schweickert alleges that Dr. Karlin told Long that Plaintiff gave all of his grant funds to Lahren and trashed Plaintiff's conduct of the Tahoe research project to Long in a meeting on February 11, 2002.

Plaintiff's claims fail on the basis of proving causation. Here, all the adverse employment actions that were instituted against Plaintiff began in 2000 with the final incident happening on February 11, 2002–weeks before Lahren filed her claims with the EEOC and the University's Affirmative Action Office.  As such, there is no causal link between the adverse action and Plaintiff's protected activity which did not begin until after Lahren filed her claims.

In addition, we fail to see how informing other colleagues in the department that Plaintiff Schweickert gave all his funds to Lahren would constitute an *adverse* employment action. Under Brooks, as stated above, badmouthing an employee outside the employment reference context does not constitute adverse employment action and Plaintiff has failed to prove how he suffered from this allegation.

**F.  Long and Frederick spread rumor that Lahren and Plaintiff had a romantic relationship**

Plaintiff Schweickert claims that Long and Frederick spread a rumor that he and Lahren were involved in romantic relationship.

However, as stated above, badmouthing outside the employment reference context cannot be considered adverse employment action. Brooks, 229 F.3d at 929.  For this reason, spreading rumors of a romantic relationship cannot constitute adverse employment action because none of the rumors were spread in the job reference context and were merely rumors being spread between colleagues.

**G.  Dr. Karlin and President Lilley gave Plaintiff a less favorable performance appraisal**

Plaintiff Schweickert claims that Karlin and President Lilley in retaliation for his involvement in the Lahren sexual harassment investigation gave him a less favorable performance appraisal of "commendable" for the calendar year 2002.  On June 3, 2003, Plaintiff sought reconsideration on his evaluation from the University's Provost's Office.  Dr. Janet Vreeland reconsidered the

13

evaluation independently and came to the conclusion that the review was fair. Plaintiff did not follow University procedures for contesting Vreeland's determination and let the matter drop.

The Ninth Circuit has held that an evaluation which could have been changed on an appeal will not constitute adverse employment action. Brooks, 229 F.3d at 929-930; King v. Mineta, 6 Fed. Appx. 616 (9th Cir. 2001). Here, because Plaintiff could have appealed the decision and eventually received a more favorable result, the arguably negative evaluation cannot constitute adverse employment action.

**2. First Amendment Right to Speak Out on Matters of Public Concern**

Plaintiff Schweickert claims that he was retaliated against because of his involvement in Lahren's sexual harassment case which constituted a violation of his constitutional right to free speech under the First Amendment. Plaintiff claims that he was retaliated against for exercising his right to free speech and that Defendants are liable under 42 U.S.C. § 1983 for having discharged her.[3]

As the Supreme Court has recently held, a government employee does not "relinquish all First Amendment rights otherwise enjoyed by citizens just by reason of his or her employment." City of San

---

[3] Defendants first argue that Plaintiff cannot bring this action under Section 1983 and also Title VII because other courts (one within this circuit and others outside) have held that Section 1983 claims could not be pursued on the same discriminatory and retaliatory acts. Friday v. City of Portland, 2005 WL 189717, at *6 (D. Or. 2005)(internal citations omitted). However, Defendants overlook the fact that whether Section 1983 relief could be claimed in that case centered around claiming relief for violation of the Equal Protection Clause and not the First Amendment.

14

Diego v. Roe, 543 U.S. 77, 524 (2004)(citing Keyishian v. Board of Regents of Univ. Of State of N.Y., 385 U.S. 589 (1967)).  However, governmental employers do retain the right to impose certain restrictions on their employees-such restraints that might be unconstitutional if applied to the public.  Id.  There are two lines of cases that have emerged when government employers have created policies restricting the speech of employees.  Employees have been given the right to speak on matters of public concern as they are uniquely qualified to discuss such topics.  Connick v. Myers, 461 U.S. 138 (1983); Pickering v. Board of Educ., 391 U.S. 563 (1968).  Second, employees are given First Amendment protection for speaking or writing on their own time on topics unrelated to their employment.  United States v. Treasury Employees, 513 U.S. 454, 465 (1995).

Section 1983 is violated when an employee is wrongfully retaliated against for speech protected by the First Amendment. Perry v. City of Beaverton, 2000 U.S. Dist. LEXIS 4001, at *20 (9th Cir. 2000).  Thus, a government employee must establish that (1) he engaged in expressive conduct that addressed a matter of public concern or was unrelated to his employment; (2) the government officials took an adverse action against him; and (3) his expressive conduct was a substantial motivating factor for the adverse action.  Alpha Energy Savers, Inc. v. Hansen, 381 F.3d 917, 923 (9th Cir. 2004)(citing Roe v. City of San Diego, 356 F.3d 1108, 1112 (9th Cir. 2004)).

Here, we find that Plaintiff Schweickert cannot establish a claim of First Amendment retaliation because, as above, he has

failed to prove adverse employment action, causation and pretext for the above recited claimed acts of retaliation.  Therefore, Defendant's Motion for Summary Judgment will be granted as to Plaintiff's First Amendment claims.

### 3. Equal Protection Claim

A section 1983 case has two elements: (1) the conduct complained or must have been under the color of state law, and (2) the conduct must have subjected Plaintiff to deprivation of constitutional rights. Ramirez v. Kroonen, 44 Fed. Appx. 212, 215 (9th Cir. 2002).

Here, Plaintiff Schweickert argues that state officials at the University (Defendants) acted under the color of state law in depriving Plaintiff of his Fourteenth Amendment rights to equal protection.  Plaintiff has alleged no facts that show that he was treated differently because of his religion, race, sex, or national origin.   Therefore, summary judgment will be granted with respect to Plaintiff's claim under 1983 for Fourteenth Amendment Equal Protection violation.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#52) with respect to the claims of Plaintiff Schweickert is **GRANTED**.

This 22nd day of December, 2005.

_Edward C. Reed_
UNITED STATES DISTRICT JUDGE

16